# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Arts Academy Charter School, | : | |
| Chester Community Charter School, | : | |
| Esperanza Academy Charter School, | : | |
| and Esperanza Cyber Charter School, | : | |
| Petitioners | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Education, | : | |
| The Secretary of Education, | : | |
| Pedro A. Rivera (In His Official | : | |
| Capacity), William Penn School | : | |
| District, | : | No. 50 M.D. 2016 |
| Respondents | : | Submitted: December 8, 2017 |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: June 8, 2018

Before this Court is the Second Amended Petition for Review (Petition) filed by Arts Academy Charter School, Esperanza Academy Charter School and Esperanza Cyber Charter School (A/ECS), and the Chester Community Charter School (CCCS) (collectively, Charter Schools) against the Commonwealth of Pennsylvania, Department of Education (Department) and Pedro A. Rivera, in his official capacity as Secretary of Education (Secretary) (collectively, Respondents), and William Penn School District (William Penn). Also before this Court are the applications for summary relief filed by CCCS (CCCS' Summary Relief Application), Respondents (Respondents' Summary Relief Application), A/ECS

(A/ECS' Summary Relief Application) and William Penn (William Penn's Summary Relief Application), and the preliminary objections filed by Respondents and William Penn.

## I. Background

"Pursuant to [S]ection 1725-A of the Charter School Law (CSL),[1] . . . a school district that has any resident students enrolled in a charter school must pay the charter school for each enrolled student."[2]  *Waslow v. Pa. Dep't of Educ.*, 984 A.2d

---

[1] Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17-1725-A.  The CSL amended Article XVII-A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702.

[2] Section 1725-A(a) of of the CSL states, in relevant part:

> Funding for a charter school shall be provided in the following manner:
>
> (1) There shall be no tuition charge for a resident or nonresident student attending a charter school.
>
> (2) For non-special education students, **the charter school shall receive for each student** enrolled no less than the budgeted total expenditure per average daily membership of the prior school year, as defined in [S]ection 2501(20) [of the Public School Code], minus the budgeted expenditures of the district of residence for nonpublic school programs; adult education programs; community/junior college programs; student transportation services; for special education programs; facilities acquisition, construction and improvement services; and other financing uses, including debt service and fund transfers as provided in the Manual of Accounting and Related Financial Procedures for Pennsylvania School Systems established by the [D]epartment. **This amount shall be paid by the district of residence of each student.**
>
> (3) For special education students, **the charter school shall receive for each student** enrolled the same funding as for each non-special education student as provided in clause (2), plus an additional amount determined by dividing the district of residence's total special education expenditure by the product of multiplying the combined percentage of [S]ection 2509.5(k) [of the Public School Code, 25 P.S.

2

575, 576 (Pa. Cmwlth. 2009) (footnote omitted). Section 1725-A(a)(5) of the CSL requires that "[p]ayments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year." 24 P.S. § 17-1725-A(a)(5). Under former Governor Thomas W. Corbett's administration,[3] the Department permitted charter schools to conduct end-of-year reconciliations and thereafter seek to have Respondents withhold any underfunded amounts from delinquent school districts' state subsidies pursuant to Section 1725-A(a)(5) of the CSL. That provision provides:

> If a school district fails to make a payment to a charter school as prescribed in this clause, the [S]ecretary shall deduct the estimated amount, as documented by the charter school, from any and all [s]tate payments made to the district after receipt of documentation from the charter school.

24 P.S. § 17-1725-A(a)(5).[4]

---

§ 25-2509.5(k)] times the district of residence's total average daily membership for the prior school year. **This amount shall be paid by the district of residence of each student.**

24 P.S. § 17-1725-A(a) (emphasis added). Section 2509.5(k) of the Public School Code was added by Section 18 of the Act of August 5, 1991, P.L. 219.

[3] Thomas W. Corbett served as Pennsylvania Governor from January 18, 2011 to January 20, 2015.

[4] Section 1725-A(a)(6) of the CSL states:

> Within thirty (30) days after the [S]ecretary makes the deduction described in [Section 1725-A(a)](5) [of the CSL], a school district may notify the [S]ecretary that the deduction made from [s]tate payments to the district under this subsection is inaccurate. The [S]ecretary shall provide the school district with an opportunity to be heard concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and whether the amounts deducted from the school district were accurate.

24 P.S. § 17-1725-A(a)(6).

The Act of July 13, 2016, P.L. 716, amended Section 1725-A(a)(5) of the CSL by adding:

The Charter Schools aver in the Petition that they "have submitted properly[-]documented requests for [2014-2015 school year] funding to the school districts and to [Respondents] in accordance with the requirements of the [CSL] and have not been paid." Petition ¶ 16; *see also* Petition ¶¶ 35-38, 166, 178. The Charter Schools specifically assert that William Penn owes CCCS $281,915.70 in funds for the 2014-2015 school year, *see* Petition ¶ 3, but William Penn "knowingly refuses to pay the undisputed amount to CCCS." Petition ¶ 97; *see also* Petition ¶ 180.

On January 8, 2016, the Department notified Pennsylvania charter schools and school districts (January 2016 Notice):

> In 2012, the Pennsylvania Commonwealth Court [in *Chester Community Charter School v. Department of Education*, 44 A.3d 715 . . . ] [(Pa. Cmwlth. 2012) (*Chester II*)] determined that the mandatory withholding requirements of [S]ection 1725-A(a)(5) of the [CSL] apply only to claims on current year funding. The prior administration delayed the implementation of the [C]ourt's decision.
>
> [**The Department**] cannot contravene the law, and therefore **will cease the end-of-year reconciliation process**. Instead, **charter schools may work directly with resident school districts to reconcile each school year's**

---

No later than October 1 of each year, a charter school shall submit to the school district of residence of each student final documentation of payment to be made based on the average daily membership for the students enrolled in the charter school from the school district for the previous school year. If a school district fails to make payment to the charter school, the [S]ecretary shall deduct and pay the amount as documented by the charter school from any and all [s]tate payments made to the [school] district after receipt of documentation from the charter school from the appropriations for the fiscal year in which the final documentation of payment was submitted to the school district of residence.

24 P.S. § 17-1725-A(a)(5). The amendment was immediately effective on July 13, 2016 and, thus controls claims made thereafter.

4

> **tuition payments** based on the number of days that each student was enrolled in the charter school.
>
> Charter schools may continue to submit invoices to [the Department] for deduction of estimated amounts related to current school year enrollment. However, pursuant to the law, charter schools must first provide resident school districts with an invoice and must have provided the resident school district with sufficient time and opportunity to make a payment before requesting subsidy redirection from [the Department]. Therefore, [**the Department**] **will only process charter school withholding requests that relate to the enrollment of students in the current school year**.

Petition Ex. A (emphasis added). Effectively, the Department declared it would only redirect delinquent school districts' funding under Section 1725-A(a)(5) of the CSL during the current fiscal year and a school district's failure to pay outstanding prior-year balances would be a matter for charter schools and school districts to resolve. Accordingly, once the 2015-2016 school year ended, the Department would no longer honor requests to deduct or withhold from state payments to school districts amounts due and owing to charter schools for that or any previous year.

On February 8, 2016, the Charter Schools commenced this action. On March 7, 2016, the Department issued a letter to all charter schools, including the Charter Schools (March 2016 Notice), clarifying:

> On January 8, 2016, the [Department] notified charter schools and school districts that it would no longer be performing an end-of-year reconciliation process. However, prior to issuing this notification, the Department received documentation from charter schools for the 2014-2015 school year. As a result, the Department is providing school districts with the information received prior to January 8, 2016. One or more charter schools have prepared the enclosed report(s) related to payments made and the amount claimed to be due for students enrolled during the 2014-2015 school year.

5

As indicated in its previous communication, the Department will not be withholding funds related to the documentation submitted by charter schools because there are no 2014-[20]15 funds from which to withhold. **This matter will proceed to an administrative hearing** as prescribed by [*Chester II*].

As a result of the record established through the administrative hearing process, the Secretary will then issue a decision. Since there are no 2014-[20]15 funds from which to withhold, the manner in which funds are paid based on the Secretary's decision will be decided by the respective charter school and school district.

Petition Ex. B (emphasis added).

According to the Petition, "[a]fter this matter was filed and amended once, [Respondents] issued several notices to a small number of the charter schools related to administrative hearings."[5] Petition ¶ 84. According to the notices, "[Respondents] had 'initially determined that [] this proceeding could be resolved through dispute resolution procedures. Therefore, the parties [we]re encouraged to engage in dispute resolution to resolve th[eir] matter[s] prior to the assignment of a hearing officer, the filings of memoranda of law or issuance of a final adjudication.'" Petition ¶ 85. Respondents further declared in the notices that "a hearing officer w[ould] be assigned if the parties did not request dispute resolution within 30 days." Petition ¶ 86. On June 3, 2016, Respondents assigned a hearing officer for the *CCCS v. William Penn* (BBFM-00-2015-07) dispute and, by July 7, 2016 order, the Department scheduled the hearing for August 26, 2016.[6] *See* Petition ¶ 87.

---

[5] According to A/ECS' Summary Relief Application, "in early May 2016, [Respondents] sent the initial notice letters for the administrative process to brick and mortar [charter schools]." A/ECS' Summary Relief App. ¶ 31. "[Respondents] did not sen[d] the initial notice letters for the administrative process to the cyber [charter schools] until months later (October 7, 2016)." A/ECS' Summary Relief App. ¶ 32.

[6] "The hearing was canceled at the parties' request and the matter was submitted on stipulations of fact [(Stipulation)] and briefs." CCCS' Summary Relief App. ¶ 30, Ex. B at 2; *see also* William Penn's Summary Relief App. at 5.

6

The Petition also reflects that, at a June 20, 2016 pre-hearing conference, William Penn "agreed that there [was] no dispute with the amount of CCCS['] 2014-2015 reconciliation claim[.]" Petition ¶ 89. In the Petition, the Charter Schools further averred that Respondents took the position that the administrative hearings were intended to establish only the amounts due, and that a judgment could be issued against William Penn, but Respondents lacked the authority and mechanism by which to enforce any resultant judgment. Petition ¶¶ 90-91. According to the Charter Schools, Respondents declared that if the reconciliation amount was not disputed, the process described in their notices "would do nothing to address the claim[s]." Petition ¶ 92; *see also* Petition ¶ 188.

On June 30, 2016, the Charter Schools filed the Petition against Respondents and William Penn,[7] seeking: (1) an order directing the school districts or Respondents to pay the Charter Schools monies owed to them for the 2014-2015 school year (Count I); (2) a declaration from this Court ruling, essentially, that the Charter Schools have exhausted their administrative remedies, that Respondents are in violation of the CSL's mandatory fund withholding provisions, that *Chester II* does not prevent its 2014-2015 school year claims, and that the Department must withhold the funds as mandated by the CSL (Count II);[8] (3) a mandamus order directing the

[7] The Charter Schools' initial petition for review was filed on February 8, 2016. The initial petition was filed by the Charter Schools and Bear Creek Community Charter School (Bear Creek) against Respondents only. They filed an amended petition for review on April 8, 2016. The April 2016 amended petition named 35 school districts. By June 30, 2016 order, this Court discontinued the Charter Schools' case against all of the school districts except William Penn. The June 30, 2016 Petition was by the Charter Schools and Bear Creek against only Respondents and William Penn. However, on November 2, 2016 the case was discontinued as to Bear Creek.

[8] Specifically, the Charter Schools requested judgment in their favor and an order declaring that: (a) the Charter Schools have exhausted their administrative remedies; (b) *Chester II* is limited to its facts; (c) *Chester II* does not require withholding and redirection only from funds budgeted in the prior school year; (d) *Chester II* does not impose an absolute limitation period/time bar under which redirection or reconciliation requests or direct payments must be made; (e) *Chester II* does not forbid the Department from withholding and redirecting state funding where the Charter Schools' payment claims were made within the school year but the process was delayed through no

7

Secretary to withhold the school districts' state funds until the Charter Schools are paid in full, to redirect the Charter Schools' overdue payments, and to make all outstanding payments to the Charter Schools (Count III); (4) a mandamus order directing William Penn to immediately pay the monies owed to CCCS, plus costs and attorney's fees, consequential losses, loss of investment income and expenses and interest for borrowing money necessitated by Respondents' acts or omissions, in accordance with Section 8303 of the Judicial Code, 42 Pa.C.S. § 8303 (Count IV); (5) a writ of prohibition keeping Respondents from exercising jurisdiction, including scheduling administrative hearings and releasing state payments to non-compliant

---

fault of the Charter Schools; (f) *Chester II* does not forbid the Department from withholding and redirecting state payments where the Charter Schools' claims were made in accordance with the Department's procedures, but the Department failed to pay them; (g) the January 2016 Notice that the law or *Chester II* preclude it from withholding the claimed funds is incorrect; (h) the Department's refusal to redirect funds unjustly enriched the non-compliant school districts; (i) prospective withholding and payment of budgeted funds from non-compliant school districts in unlawfully-retained amounts does not constitute the Commonwealth's payment of money damages; (j) Charter Schools' withholding, redirection or reconciliation requests to the school districts for the 2014-2015 school year in accordance with custom and practice in 2012-2013 and 2013-2014 school years triggered as a matter of law the school districts' and the Department's mandatory obligations under the CSL; (k) under the CSL the requirement that school districts are primarily responsible for paying the Charter Schools is non-delegable; (l) the school districts' mandatory and non-delegable responsibility under the CSL cannot be transferred to the Department or any other party; (m) the school districts are responsible for their Charter School obligations if the Department does not pay withholding or redirection; (n) the Charter Schools' withholding and redirection requests shall be honored consistent with prior practice and in amounts the Court will order in a schedule; (o) the CSL requires that non-compliant school districts' funds must be withheld and redirected until the Charter Schools are paid in full, regardless of the school year to which the request corresponds or from which state payments are withheld; (p) the CSL prohibits the Department from releasing state payments from any year to any school district that has failed to pay its charter schools in full, or is in violation of the CSL's funding provisions as of when the state payments are released; (q) the CSL requires the school districts, the Charter Schools and the Department to reconcile and pay all due amounts regardless of the school year end date; (r) payments by the Pennsylvania Treasury or the Department to any school district constitute any and all state payments under the CSL and are subject to the Department's withholding and redirection; and (s) the Court has exclusive jurisdiction over this matter until such time as all parties certify that compliance has been achieved. *See* Petition at 34-38.

8

school districts, until the Charter Schools' funds are fully restored (Count V);[9] and, (6) a permanent injunction prohibiting Respondents from enforcing the January 2016 Notice, further delaying or refusing to comply with their duties and the Charter Schools' requests to withhold and redirect state payments, failing or refusing to make all future obligations pursuant to their obligations under the United States and Pennsylvania Constitutions and the CSL, and releasing state payments to non-compliant school districts until the Charter Schools' reconciliations are paid in full (Count VI).

On August 1, 2016, Respondents filed their Preliminary Objections seeking to dismiss Petition Counts I, II, III, V and VI for failure to state claims upon which relief may be granted. On August 2, 2016, William Penn filed its Preliminary Objections, therein incorporating Respondents' Preliminary Objections and adding claims for insufficient pleadings. On August 30, 2016, the Charter Schools denied the allegations in Respondents' Preliminary Objections. On August 31, 2016, the Charter Schools opposed William Penn's Preliminary Objections.

On May 9, 2017, CCCS filed its Summary Relief Application seeking a mandamus order for Respondents (Petition Count III) and William Penn (Petition Count IV) to pay the undisputed reconciliation funds to CCCS, plus costs and attorney's fees in accordance with the Court's May 1, 2017 decisions in *Richard Allen Preparatory Charter School v. Department of Education*, 161 A.3d 415 (Pa. Cmwlth. 2017), *aff'd per curiam*, ___ A.3d ___ (Pa. No. 19 EAP 2017, filed June 1, 2018), and *KIPP Philadelphia Charter Schools v. Department of Education*, 161 A.3d 430 (Pa. Cmwlth. 2017) ), *aff'd per curiam*, ___ A.3d ___ (Pa. No. 20 EAP

[9] "[T]he purpose of [a writ of prohibition] is to protect a party from enduring a hearing or trial before a tribunal that has absolutely no power to deal with the subject matter before it[.]" *Indep. Blue Cross v. Pa. Ins. Dep't*, 670 A.2d 221, 223 (Pa. Cmwlth. 1996), *aff'd per curiam*, 687 A.2d 1117 (Pa. 1997).

2017, filed June 1, 2018).[10]  In *Richard Allen* and *KIPP*, this Court ruled that school districts are responsible for charter school payments, that *Chester II* was limited to its facts, that Respondents had a duty to honor the charter schools' redirection requests, and that charter schools may be entitled to costs and attorney's fees arising from Respondents' conduct.  On May 23 2017, William Penn opposed CCCS' Summary Relief Application.  On May 26, 2017, Respondents opposed CCCS' Summary Relief Application.

In *CCCS v. William Penn*, William Penn was notified that it owed CCCS $281,915.70 for the 2014-2015 school year.  *See* CCCS' Summary Relief App. Ex. B at 4, 9-11.  However, relying on Section 1725-A(a)(5) of the CSL and *Chester II*, William Penn objected to CCCS' request that Respondents redirect William Penn's 2015-2016 state funding in order to pay CCCS the 2014-2015 school year amounts and, in the alternative, argued that it is not responsible for paying CCCS because CCCS' claims were not presented in the school year to which they related.  *See* CCCS' Summary Relief App. Ex. B at 2, 12-15.

On May 25, 2017,[11] the Secretary concluded in *CCCS v. William Penn*:

> [T]he requirement in [S]ection 1725-A(a)(5) [of the CSL] to make a payment is separate from the redirection remedy provided for when a charter school is not paid, which is itself also separate from [Respondents'] authority to adjudicate disputes.  Furthermore, although [Respondents] cannot withhold the payments from William Penn, this does

---

[10] The charter schools in *Richard Allen* and *KIPP* similarly sought direct payment and declaratory, mandamus and injunctive relief in their favor and against Respondents for the precise circumstances presented in the case at bar.  Respondents filed preliminary objections to the charter schools' complaints.  This Court, *en banc*, granted summary relief in favor of the petitioning charter schools, and awarded costs and attorney's fees.  The Court overruled Respondents' preliminary objections as moot.

[11] Although this Court filed *Richard Allen* and *KIPP* on May 1, 2017, the Secretary declined to apply or even address these judicial decisions in its CCCS Decision "[b]ecause those decisions were issued after the briefing in [the *CCCS v. William Penn*] matter had closed and [were] based on facts different than those presented in [the *CCCS v. William Penn*] dispute[.]"  *CCCS* Dec. at 12 n.3.

10

> not mean that [Respondents] cannot adjudicate the dispute between William Penn and [CCCS,] and that [Respondents] cannot order William Penn to make payments to [CCCS].

CCCS' Summary Relief App. Ex. B (*CCCS* Decision) at 17-18. Ultimately, the Secretary agreed that the CSL imposes a mandatory duty on school districts to pay charter schools, and specifically ordered William Penn to pay CCCS $281,915.70 for the 2014-2015 school year. *See CCCS* Dec. at 11, 17-18. William Penn paid CCCS in full on July 10, 2017. *See* CCCS' Ans. to William Penn's Summary Relief App. ¶ 15.

On June 23, 2017, Respondents filed their Summary Relief Application seeking relief in their favor and against the Charter Schools because, *inter alia*, the July 13, 2016 CSL amendment (Act 86) "squarely addresses and resolves the challenges to the reconciliation process asserted by [the Charter Schools and the Pennsylvania Coalition of Public Charter Schools] . . . with respect to the 2015-[20]16 . . . and subsequent school years" and, thus, moots their claims for prospective declaratory and injunctive relief.[12] Respondents' Summary Relief App. ¶ 3. On July 6, 2017, the Charter Schools opposed Respondents' Summary Relief Application.

On June 28, 2017, A/ECS filed their Summary Relief Application seeking declarations in their favor relative to Petition Count I (for delinquent 2014-2015 school year payments) and Petition Count II (for the Department to withhold the school districts' delinquent funds), plus costs and attorney's fees, pursuant to *Richard Allen* and *KIPP*. On July 17, 2017, Respondents opposed A/ECS' Summary Relief Application.

On August 16, 2017, William Penn filed its Summary Relief Application seeking dismissal from this action because, relative to CCCS' direct payment

---

[12] Respondents acknowledge that, since Act 86 was not retroactive, Act 86 did not resolve the 2014-2015 school year reconciliations at issue in this action. Rather, the 2016 CSL amendment controls charter schools' reconciliations for the 2015-2016 and subsequent school years. *See* Respondents' Summary Relief App. ¶¶ 2, 4, 7; *see also* Respondents' Br. at 17-18, 20-21.

11

(Petition Count I) and declaratory judgment (Petition Count II) claims, "CCCS and [William Penn] have pursued their respective claims and defenses through the Department's administrative process, and the matter has been fully adjudicated. CCCS has received payment in full from [William Penn] for the 2014-2015 school year" and, thus, "there is no longer any actual case or controversy . . . against [William Penn]." William Penn Summary Relief App. at 2; *see also* William Penn's Summary Relief App. ¶¶ 15, 20, Ex. I. William Penn further asserts that since Act 86 controls reconciliation requests for the 2015-2016 school years and thereafter, there should be no future controversies. In addition, William Penn claims that CCCS has an adequate remedy at law, and that there is no factual or legal basis for CCCS' mandamus claim against William Penn (Petition Count IV) for payment, damages, costs and attorney's fees, since William Penn was merely exercising its rights to be heard and, when the process concluded, William Penn paid CCCS as ordered. Although William Penn paid CCCS on July 10, 2017, *see* CCCS' Ans. to William Penn's Summary Relief App. ¶ 15, CCCS nevertheless opposed William Penn's Summary Relief Application, arguing that the payment did not resolve CCCS' entitlement to attorney's fees based on William Penn's two year refusal to acknowledge its express legal duty. *See* CCCS' Br. in Opposition to William Penn's Summary Relief App. at 24-25. On December 6, 2017, William Penn filed a reply brief to CCCS' opposition to William Penn's Summary Relief Application.

## II. Summary Relief

> [Pennsylvania Rule of Appellate Procedure] 1532(b) provides that '[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.' Pa.R.A.P. 1532(b). 'An application for summary relief is properly evaluated according to the standards for summary judgment.' *Myers v.*

12

*Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). That is, in ruling on a[n application] for summary relief, the **evidence must be viewed in the light most favorable to the non-moving party** and **the court may enter judgment only if**: (1) there are **no genuine issues of material fact**; **and** (2) the **right to relief is clear as a matter of law**.

*Flagg v. Int'l Union, Sec., Police, Fire Prof'ls of Am., Local 506*, 146 A.3d 300, 305 (Pa. Cmwlth. 2016) (emphasis added).

### A. Genuine Issue of Material Fact

CCCS and A/ECS declare that there are no genuine issues of material fact to be resolved. *See* CCCS' Summary Relief App. ¶ 54; *see also* CCCS' Brief in Support of Summary Relief App. at 14; A/ECS' Summary Relief App. ¶ 102; A/ECS' Br. in Support of Summary Relief App. at 26.

Although Respondents do not expressly declare that there are no outstanding factual issues, their Summary Relief Application seeks judgment in their favor on the bases the Charter Schools' 2014-2015 tuition reconciliation claims have been resolved, and Act 86 provides the means for the Charter Schools to obtain funds thereafter. *See* Respondents' Summary Relief App. ¶¶ 13, 15. Accordingly, neither of Respondents' purported dismissal grounds call upon this Court to resolve a material factual issue. Like Respondents, although William Penn does not specifically state that there are no outstanding issues of material fact, it repeatedly pronounces that since CCCS has been paid, and Act 86 resolves future claims, there is no case or controversy left to be resolved. *See* William Penn's Summary Relief App. ¶¶ 20, 23.

Therefore, the issue before the Court is whether Respondents, William Penn and/or the Charter Schools are entitled to judgment as a matter of law.

## B. Clear Right to Relief

In the Petition, the Charter Schools ask this Court to direct Respondents to withhold the School Districts' state funding for payment to the Charter Schools. The Charter Schools also request a writ of prohibition. Further, the Charter Schools seek declaratory, mandamus and/or injunctive relief.

### 1. Payment Order

The Charter Schools claim in the Petition that they "have submitted properly[-]documented requests for [2014-2015 school year] funding to the school districts and to [Respondents] in accordance with the requirements of the [CSL] and have not been paid." Petition ¶ 16; *see also* Petition ¶¶ 35-38, 166, 178. The Charter Schools specifically assert that William Penn owed CCCS $281,915.70 for the 2014-2015 school year, *see* Petition ¶ 3, but William Penn refused to pay. *See* Petition ¶¶ 97, 180. In Petition Count I, the Charter Schools request an order from this Court directing the non-compliant school districts or Respondents to pay the Charter Schools monies owed to them for the 2014-2015 school year.[13]

However, A/ECS did not claim in the Petition that any school district owed them funds for the 2014-2015 school year.[14] *See* Petition ¶¶ 1, 4-5. Further, although CCCS had a 2014-2015 school year reconciliation claim against William Penn, William Penn has since paid CCCS in full. Because A/ECS had no funding claims against any school districts, and CCCS' claim against William Penn has been resolved, there is no legal basis upon which this Court can now direct Respondents to withhold any school district's state funding for the Charter Schools. Under the

---

[13] Notably, CCCS' Summary Relief Application does not reference Petition Count I.

[14] *See* A/ECS' Summary Relief App. at 2. Because A/ECS did not assert reconciliation claims, they primarily seek a declaration of their rights and Respondents' duties.

14

circumstances, Respondents and William Penn have a clear right to relief in their favor as to Petition Count I.

### 2. Writ of Prohibition

In Petition Count V, the Charter Schools seek a writ of prohibition to keep Respondents from exercising jurisdiction - by scheduling administrative hearings and/or releasing state payments to non-compliant school districts - until the Charter Schools' funds are fully restored. However, because the Charter Schools have no outstanding funding claims, there is no legal basis upon which this Court may now prohibit Respondents from exercising jurisdiction over hearing schedules or William Penn's or any other school district's state funding payments. Under such circumstances, Respondents and William Penn have a clear right to relief in their favor as to Petition Count V.

### 3. Declaratory Relief

In Petition Count II, the Charter Schools seek declarations from this Court that they have exhausted their administrative remedies, that Respondents violated the CSL's mandatory fund withholding provisions and, since *Chester II* does not preclude its 2014-2015 school year claims, that the Department must withhold funds as mandated by the CSL.

Section 7532 of the Declaratory Judgments Act provides: "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532. Section 7541(a) of the Declaratory Judgments Act states that "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541(a). "Granting or denying a petition for a

declaratory judgment is committed to the sound discretion of a court of original jurisdiction." *GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276, 1285 (Pa. Cmwlth. 2009).

> However, declaratory judgment is appropriate **only** where there exists an actual controversy. *Allegheny C[ty]. Constables Ass'n, Inc. v. O'Malley*, . . . 528 A.2d 716 ([Pa. Cmwlth.] 1987). 'An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties.' *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 80 (Pa. Cmwlth. 2010) (*Chester I*).

*Richard Allen*, 161 A.3d at 422; *see also KIPP*, 161 A.3d at 438.

Section 1725-A(a) of the CSL directs that school districts "shall pay" the charter schools for each enrolled resident student. 24 P.S. § 17-1725-A(a)(2), (3); *see also Waslow*. This Court has also declared:

> The General Assembly mandated in Section 1725-A(a)(5) of the CSL that '[i]f a school district fails to make payment to the charter school, **the [S]ecretary <u>shall deduct and</u> pay the amount as documented by the charter school <u>from any and all [s]tate payments</u> made to the [school] district** after receipt of documentation from the charter school[.]' 24 P.S. § 17-1725-A(a)(5) (bold and underline emphasis added). This Court has declared that '[t]here is no air in Section 1725-A(a)(5) [of the CSL]. . . . There is **no discretion to exercise** . . . . ' *Chester I*, 996 A.2d at 77-78 (emphasis added). Rather, '[t]he Department has a **mandatory, non-discretionary duty** to withhold subsidies to a school district based upon the estimated amount documented by the charter school.' *Id.* at 78 (emphasis added). Therefore,
>
>> [u]nder [Section 1725-A(a)(5) of the CSL], if a school district does not make its required statutory payments, the Secretary, upon notification by the affected charter school, shall deduct the estimated amount as documented by the charter school from any and all state payments made to the school

district. If a school district refuses to transfer funds to a charter school, the Secretary has no discretion to decline to withhold the estimated amount of payment from the charter school. Thus, *the Secretary has a mandatory, non-discretionary obligation to deduct the estimated amount of payment due a charter school by a school district upon submission of supporting documentation by the charter school.* [Under Section 1725-A(a)(6) of the CSL, a] school district has 30 days to challenge the accuracy of the estimated amount withheld by the Secretary and to require the Secretary to provide the school district with an opportunity to be heard on the estimated deduction.

*Chester II*, 44 A.3d at 719-20.

Despite this Court's acknowledgement in *Chester II* that Section 1725-A(a) of the CSL represents the [c]harter [s]chool's exclusive remedy against the [school d]istricts for the underfunded amounts, and that the [c]harter [s]chool submitted a reconciliation request and supporting documentation, **the Secretary has not deducted and withheld or paid the outstanding funds to the [c]harter [s]chool, nor scheduled a hearing**. Under the circumstances, this matter presents imminent and inevitable litigation that a declaration from this Court would resolve for the [c]harter [s]chool and, perhaps, the limited number of similarly-situated charter schools. *Chester I.*

*Richard Allen*, 161 A.3d at 422-23 (italic emphasis added); *see also KIPP*, 161 A.3d at 438-39 (italic emphasis added). This Court further concluded that *Chester II* does not prohibit charter schools from making their 2014-2015 school year reconciliation claims, or prevent Respondents from acting on them, in the 2015-2016 school year. *See Richard Allen*; *see also KIPP*. Accordingly, **the law is settled that school districts violate the CSL by refusing to pay charter schools for resident students enrolled for the 2014-2015 school year.** *See id.* **The law is also clear that Respondents violate the CSL by failing to deduct and withhold school district**

**funding in the amounts for which charter schools have submitted reconciliation requests and supporting documentation for the 2014-2015 school year**. *See id.*

A/ECS did not submit reconciliation requests and supporting documentation to Respondents for outstanding 2014-2015 school year funds.

> In Pennsylvania, the doctrine of standing . . . is a prudential, judicially[-]created principle designed to winnow out litigants who have no direct interest in a judicial matter. *In re Hickson,* . . . 821 A.2d 1238, 1243 ([Pa.] 2003). For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been 'aggrieved.' *Pittsburgh Palisades Park, LLC v. Commonwealth,* . . . 888 A.2d 655, 659 ([Pa.] 2005). . . . A party is aggrieved for purposes of establishing standing when the party has a 'substantial, direct and immediate interest' in the outcome of litigation. *Johnson [v. Am. Standard],* 8 A.3d [318,] 329 [(Pa. 2010)] (quoting *Fumo v. City of Phila*[.]*,* . . . 972 A.2d 487, 496 ([Pa.] 2009)). A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative. *Id.*

*Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014). Therefore, in order for A/ECS to obtain declaratory judgment, they had to "show the existence of an actual controversy related to the invasion or a threatened invasion of [their] legal rights." *Berwick Twp. v. O'Brien*, 148 A.3d 872, 881 (Pa. Cmwlth. 2016). Because A/ECS have not pled an actual controversy, they lack standing to obtain administrative relief and/or a judgment from this Court.

CCCS, on the other hand, submitted reconciliation requests and supporting documentation to William Penn and Respondents for outstanding 2014-2015 school year funds, which William Penn refused to pay. Thus, **William Penn violated Section 1725-A(a) of the CSL relative to CCCS' claims**. *Richard Allen*;

*KIPP*.  Accordingly, CCCS was aggrieved by an actual controversy appropriate for resolution by declaratory judgment.

This Court acknowledges that "where the legislature has provided an administrative procedure to challenge and obtain relief from an agency's action, failure to exhaust that remedy bars this Court from hearing claims for declaratory or injunctive relief with respect to that agency action."[15]  *Funk v. Dep't of Envtl. Prot.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013).  In Section 1725-A(a)(5) of the CSL, the General Assembly clearly provided an administrative remedy for William Penn's violation, that required Respondents to "deduct the estimated amount, as documented by [CCCS], from any and all [s]tate payments made to [William Penn] after receipt of [CCCS'] documentation[.]"  24 P.S. § 17-1725-A(a)(5).  And, pursuant to Section 1725-A(a)(6) of the CSL, Respondents were required to conduct a hearing if William Penn challenged the accuracy of the withheld sum.

Here, Respondents initiated administrative proceedings related to CCCS' claims against William Penn.[16]  However, CCCS made its 2014-2015 school year

---

[15]     The doctrine of exhaustion of administrative remedies requires that a person challenging an administrative decision must first exhaust all adequate and available administrative remedies before seeking relief from the courts.  The purposes of this exhaustion requirement are to prevent premature judicial intervention in the administrative process and ensure that claims will be addressed by the body with expertise in the area.

*Funk v. Dep't of Envtl. Prot.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013) (citations omitted).

[16] In its July 2017 brief in support of its Summary Relief Application, CCCS added that the Secretary rendered its CCCS Decision after this Court gained exclusive jurisdiction over CCCS' claims and, thus, the CCCS Decision is "un-authoritative, even if it could be enforced efficiently." CCCS' Brief in Support of Summary Relief App. at 21.  This statement is consistent with CCCS' position at the June 20, 2016 pre-hearing conference that although this Court had exclusive jurisdiction, "without wa[i]ving any objections[,] . . . CCCS would participate fully in the administrative proceeding in an effort to resolve the matter."  CCCS' Summary Relief App. ¶ 19; *see also* Stipulation ¶ 44.  However, CCCS provides no legal authority to support its conclusion.

While Pennsylvania Rule of Appellate Procedure 1701 proscribes an agency from acting further in a matter once an appeal is filed, this Court's research disclosed no similar prohibition applicable to the situation currently before the Court.  Moreover, this Court has declined to dismiss

reconciliation request to William Penn and then to Respondents on or about August 28, 2015, only weeks after the applicable school year ended, in accordance with Respondents' previously-permitted practice.[17]  *See* CCCS' Summary Relief App. ¶¶ 1-3; *see also* CCCS' Brief in Support of Summary Relief App. at 5; William Penn's Ans. to CCCS' Summary Relief App. ¶¶ 1-3; Respondents' Ans. to CCCS' Summary Relief App. at 4.  Contrary to Section 1725-A(a)(5) of the CSL, rather than deduct CCCS' estimated amount from William Penn's state payments, Respondents notified the Charter Schools with the January 2016 Notice regarding the policy change. Having been left with no adequate and available statutory remedy for the situation, the Charter Schools commenced this action on February 8, 2016.[18]

Respondents filed preliminary objections to the Charter Schools' petition based, in part, on the Charter Schools' failure to join the school districts.  By the March 2016 Notice, Respondents notified the Charter Schools that administrative

---

an original jurisdiction action arising from an agency's purported mishandling of a matter, despite that there was an adequate statutory remedy for the underlying substantive claim.  *See GTECH* (wherein GTECH had an exclusive remedy in the Procurement Code's bid protest procedure – which was litigated to a final determination and was on appeal to this Court – but had no other remedy at law to challenge the Department of Revenue's refusal to act in accordance with the Procurement Code's bid protest procedures).  By extension, despite that the CSL afforded the Charter Schools a specific appealable reconciliation process, the Charter Schools could simultaneously bring an original jurisdiction action based on Respondents' failure to comply with the CSL.

[17] As of August 2015, CCCS was seeking $522,887.50.  *See* Respondents' Brief in Opp. to CCCS' Summary Relief App. Ex. B (*CCCS* Certified Record (C.R.)) at 95; *see also* Respondents' Ans. to CCCS' Summary Relief App. at 5; William Penn's Ans. to CCCS' Summary Relief App. ¶ 2.  By March 16, 2016 letter, CCCS notified William Penn that its outstanding reconciliation amount as of that time was $486,321.39.  *See* C.R. at 63, 98.  Once the $204,405.69 February 2016 subsidy payment was made, $281,915.70 remained unpaid.  C.R. at 99.  Respondents acknowledged CCCS' $281,915.70 2014-2015 school year claim in an April 2016 letter.  *See* C.R. at 41.  In its June 6, 2016 Pre-Hearing Statement, William Penn stated it "does not dispute the [$281,915.70] amount."  C.R. at 27.  By September 15, 2016 letter to the hearing examiner, William Penn "confirm[ed] . . . that the amount at issue . . . [wa]s in fact $281,915.70[.]"  C.R. at 105. Accordingly, William Penn never disputed the amount of CCCS' claim, only that it was required to pay CCCS.

[18] *Richard Allen* and *KIPP* were also initiated the same day.

proceedings for 2014-2015 school year funding would be commenced. On April 8, 2016, the Charter Schools amended their petition, joining the school districts.

On April 14, 2016, the Department informed CCCS and William Penn that there are no funds from which the $281,915.70 reconciliation payment could be made, but the parties were entitled to a hearing in accordance with *Chester II*. *See* CCCS' Summary Relief App. ¶ 12; *see also* CCCS' Brief in Support of Summary Relief App. at 8; William Penn's Ans. to CCCS' Summary Relief App. ¶ 12; Respondents' Ans. to CCCS' Summary Relief App. at 16; Respondents' Br. in Opposition to CCCS' Summary Relief App. Ex. B (CCCS Certified Record (C.R.)) at 41. The Department assigned a hearing officer on June 23, 2016, and the hearing was scheduled for August 26, 2016, but was eventually submitted on the parties' stipulated facts and briefs. *See* C.R. at 59.

On September 15, 2016, William Penn confirmed to the hearing examiner that the amount at issue was $281,915.70. *See* C.R. at 105. Thereafter, the parties briefed their positions to the hearing examiner. The administrative record was certified to the Secretary on December 9, 2016. The Secretary waited until May 25, 2017 (three weeks after *Richard Allen* and *KIPP* were filed, and two weeks after CCCS filed its Summary Relief Application in this matter) to order William Penn to pay CCCS the reconciliation amount.[19]

---

[19] CCCS' Claim Timeline:

CCCS' reconciliation request made – August 28, 2015
Department issued January 2016 Notice – January 8, 2016
Charter Schools filed original petition – February 8, 2016
Department issued March 2016 Notice – March 9, 2016
Charter Schools filed an amended petition (adding 35 school districts) – April 8, 2016
Department notified schools it would commence administrative process – April 14, 2016
Department gave notice that hearings would be scheduled – May 2016/October 2016
Department assigned hearing officer – June 3, 2016
Pre-hearing Conference held – June 20, 2016
Petition filed – June 30, 2016
Department order scheduling August 26, 2016 hearing – July 7, 2016

The Secretary acknowledged in *CCCS v. William Penn*:

> Despite the fact that it may not redirect funds as requested by the charter school, [the Department] remains the first venue authorized to adjudicate charter school funding disputes within the scope of objections to payment that can be raised under [S]ection 1725-A(a)(6) [of the CSL]. By conducting a hearing, [the Department] provides an administrative process that is useful to the parties and to the [c]ourt on appeal in that [the Department] develops the record. Additionally, the Secretary, using the education expertise commensurate with his position and of those who can advise the Secretary within [the Department], determines the appropriateness of the claim or objection. Indeed, it is a well-settled tenet that an agency interpreting its governing statute and regulations is entitled to great deference. [*Sch. Dist. of Phila. v.*] *Indep*[.] *Charter Sch.*, 774 A.2d [798,] 805 [(Pa. Cmwlth. 2001)]. This is particularly true here since the parties are seeking an interpretation of the CSL concerning the obligation of school districts to make payments to charter schools.

CCCS Dec. at 18 n.4.

The Charter Schools filed the original petition in February 2016 in response to Respondents' January 2016 Notice that they would not be paid. Despite Respondents' knowledge in April 2016 that CCCS' 2014-2015 reconciliation claim amount was undisputed and William Penn did not pay it, **Respondents violated Section 1725-A(a)(5) of the CSL by not withholding William Penn's funds**. *Richard Allen*; *KIPP*. Although Respondents informed the parties that they were

---

Hearing examiner notified of the nearly-calculated amount – August 26, 2016

Hearing examiner accepted the Stipulations – September 1, 2016 (and 9/15/16 amendment)

William Penn filed its brief in the administrative matter – September 29, 2016

CCCS filed its brief in the administrative matter – October 27, 2016

William Penn filed its reply brief in the administrative matter – November 18, 2016

Hearing examiner certified the administrative record to the Secretary – December 9, 2016

This Court issued *Richard Allen* and *KIPP* – May 1, 2017

CCCS filed its Summary Relief Application – May 9, 2017

Secretary issued *CCCS* Decision – May 25, 2017

William Penn paid CCCS – July 10, 2017

entitled to a hearing, the administrative proceeding was not scheduled until August 2016, **one year after CCCS requested its funds**, and no decision was forthcoming for **another nine months** - on May 25, 2017 - *after* this Court issued *Richard Allen* and *KIPP*. Even then, the Secretary did not apply this Court's *Richard Allen* and *KIPP* rulings. Thus, while CCCS attempted to exhaust its administrative remedies, it was at all times at William Penn and Respondents' mercy.

> Our Supreme Court has instructed that where the General Assembly has
>
> > seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency. . . .
>
> *Feingold v. Bell of P*[*a.*], . . . 383 A.2d 791, 793 ([Pa.] 1977). Our Supreme Court also noted that '[a]s with all legal rules,' this one is not inflexible. *Id.* **A court may exercise jurisdiction where the administrative remedy is not adequate.** *Id.* **'The mere existence of a remedy does not dispose of the question of its adequacy; the administrative remedy must be 'adequate and complete.''** *Id.* at 794 (citation omitted). **Where a statutory procedure would be of 'little, if any, utility,' it may be bypassed.** *Borough of Green Tree v. B*[*d.*] *of Prop*[.] *Assessments*, . . . 328 A.2d 819, 825 ([Pa.] 1974).

*Sunrise Energy, LLC v. FirstEnergy Corp.*, 148 A.3d 894, 902 (Pa. Cmwlth. 2016) (emphasis added).

Were this Court to adopt Respondents' position that this Court lacked jurisdiction until CCCS' administrative remedies were exhausted in May 2017, CCCS' cause of action would be hamstrung for as long as Respondents chose not to act. The sudden and retroactive effect of the Department's January 2016 Notice and

its extended delay in conducting a hearing and rendering a decision, left CCCS without means to obtain funding to which it was statutorily entitled, and/or require William Penn and Respondents to remedy the situation. Under such circumstances, we hold that CCCS exhausted its administrative remedies, and this Court has jurisdiction over its declaratory relief claim. *See Richard Allen*; *see also KIPP*.

Notwithstanding, a declaratory judgment "must not be employed to determine rights in anticipation of events that may never occur or for consideration of moot cases[20] or for the rendition of an advisory opinion that may prove to be academic." *Mazur v. Wash. Cty. Redevelopment Auth.*, 954 A.2d 50, 53 (Pa. Cmwlth. 2008). Here, *Richard Allen* and *KIPP* settled the issue of Charter Schools' rights and

---

[20] As a general rule, courts will not decide moot cases. '[A] case is moot if there is no actual case or controversy in existence at all stages of the controversy.' *Phila. Pub. Sch. Notebook v. Sch. Dist. of Phila.*, 49 A.3d 445, 448 (Pa. Cmwlth. 2012). As this Court explained in *Philadelphia Public School Notebook:*

> Mootness problems arise in cases involving litigants who clearly had one or more justiciable matters at the outset of the litigation, but events or changes in the facts or law occur which allegedly deprive the litigant of the necessary stake in the outcome after the suit is underway.

*Id.* It is well settled that the courts 'do not render decisions in the abstract or offer purely advisory opinions.' *Pittsburgh Palisades Park, LLC v. Commonwealth, . . .* 888 A.2d 655, 659 ([Pa.] 2005).

*Costa v. Cortes*, 142 A.3d 1004, 1016 (Pa. Cmwlth.), *aff'd per curiam,* 145 A.3d 721 (Pa. 2016).

> [T]here are exceptions to the mootness doctrine for circumstances where '(1) the conduct complained of is capable of repetition yet evading review, or (2) involves questions important to the public interest, or (3) will cause one party to suffer some detriment without the Court's decision.' *Cytemp Specialty Steel Div., Cyclops Corp. v. Pa. Pub. Util. Comm'n, . . .* 563 A.2d 593, 596 ([Pa. Cmwlth.] 1989).

*Costa*, 142 A.3d at 1016-17. Despite that the cases brought before this Court demonstrated that the issue of the 2014-2015 charter school reconciliations in light of the January 2016 Notice is capable of repetition, it has not evaded review. In addition, the questions were resolved by *Richard Allen* and *KIPP*. Finally, neither party will suffer detriment without this Court's declaration. Thus, the mootness doctrine exceptions do not apply in this case.

24

Respondents' responsibilities related to the 2014-2015 school year reconciliation claims, A/ECS had no 2014-2015 claims, CCCS resolved its 2014-2015 claims,[21] and the July 13, 2016 amendment to Section 1725-A(a) of the CSL controls claims made thereafter. Under such circumstances, there is no longer an actual controversy upon which this Court may render declaratory judgment.[22]

Accordingly, William Penn and Respondents have a clear right to relief in their favor as to Petition Count II.

### 4. Mandamus Relief

In Petition Count III, the Charter Schools also seek a mandamus order directing the Secretary to withhold the school districts' state funds until the Charter Schools are paid in full, to redirect the Charter Schools' overdue payments, and to make all outstanding payments to the Charter Schools. In Petition Count IV, CCCS requests a mandamus order directing William Penn to immediately pay the monies owed, plus costs and attorney's fees and other expenses necessitated by Respondents' acts or omissions, in accordance with Section 8303 of the Judicial Code.[23]

---

[21] CCCS' claims for attorney's fees and costs are denied. Costs and attorney's fees are not permissible ancillary relief in declaratory judgment actions, but rather are permitted only to effectuate a declaratory judgment already entered by the Court. *See Mosaica Acad. Charter Sch. v. Dep't of Educ.*, 813 A.2d 813 (Pa. 2002); *see also Richard Allen* and *KIPP*.

Although this Court is dismayed at Respondents' extreme delay in ordering William Penn to pay CCCS, and their disregard of *Richard Allen* and *KIPP*, CCCS has been paid, which is what the CSL intended.

[22] Notwithstanding the Charter Schools' argument to the contrary, *see* Charter Schools' Answer to Respondents' Summary Relief Application at 5-6 and 14-15, this Court is not compelled in this case nor is it authorized to anticipate what should happen if the Commonwealth faces future protracted budget stalemates and/or Respondents fail to timely schedule administrative hearings and/or deduct and withhold state funding to satisfy post-2014-2015 school year charter school reconciliation claims.

[23] Section 8303 of the Judicial Code specifies: "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal." 42 Pa.C.S. § 8303.

The Pennsylvania Supreme Court has held:

'Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty **where there is a clear legal right in the plaintiff, a corresponding duty in the defendant**, and want of any other appropriate or adequate remedy.' *Jackson v. Vaughn, . . .* 777 A.2d 436, 438 ([Pa.] 2001) (citation omitted). It may be used to compel performance of a ministerial duty, or to compel action in a matter involving judgment or discretion. However, it may not be used to direct the exercise of judgment or discretion in a particular way, or to direct the retraction or reversal of an action already taken. 'Mandamus is a device that is available in our system to compel a tribunal or administrative agency to act when that tribunal or agency has been 'sitting on its hands.' ' [*Pa. Dental Ass'n v. Commonwealth Ins. Dep't, . . .* 516 A.2d 647, 652 ([Pa.] 1986).]

*Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1107-08 (Pa. 2007) (citations omitted; emphasis added).

Despite having declared that the Charter Schools had a clear legal right to be paid for the 2014-2015 school year and that Respondents had a corresponding legal duty to ensure that they were paid, *see Richard Allen* and *KIPP*, since neither A/ECS nor CCCS have outstanding funding claims, there is currently no legal basis upon which this Court may direct William Penn to immediately pay reconciliation funds or order Respondents to withhold any school district's state funds.[24]

---

[24] CCCS is not entitled to attorney's fees from William Penn or Respondents. Attorney's fees may be awarded in mandamus actions where there has been arbitrary, dilatory and/or obdurate conduct during litigation. *See Richard Allen* and *KIPP*. Although Respondents' retroactive notice that the charter schools would not be paid was arbitrary, *id.*, and both William Penn and Respondents delayed in getting CCCS paid, CCCS was nevertheless ultimately afforded a hearing and was paid. Accordingly, there is no act for this Court to compel William Penn or Respondents to carry out. Without a mandamus order, there can be no corresponding attorney fee award.

CCCS' claim for costs against William Penn and Respondents are denied. Although this Court is dismayed at Respondents' extreme delay in ordering William Penn to pay CCCS, and its disregard of *Richard Allen* and *KIPP*, CCCS has been paid, which is what the CSL intended.

Under the circumstances, Respondents have a clear right to relief in their favor as to Petition Count III, and William Penn has a clear right to relief in its favor as to Petition Count IV.

### 5. Injunctive Relief

In Petition Count VI, the Charter Schools request a permanent injunction prohibiting Respondents from enforcing the January 2016 Notice, from further delaying or refusing to comply with their duties and Charter Schools' requests to withhold and redirect state payments, from failing or refusing to fulfill their obligations under the CSL, and from releasing state payments to non-compliant school districts until reconciliations are paid in full.

In *Richard Allen*, this Court granted the charter school injunctive relief, stating:

> An injunction that commands the performance of an affirmative act, a 'mandatory injunction,' is the rarest form of injunctive relief and is often described as an extreme remedy. The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. An applicant seeking mandatory injunctive relief must establish the following elements: (1) irreparable harm will occur that is not compensable by money damages; (2) greater injury will result from the denial of the injunction than by granting the injunction; (3) the injunction will restore the status quo between the parties; and (4) the party seeking relief has a clear right to relief in an actionable claim.
>
> *Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 582 (Pa. Cmwlth. 2012) (citations omitted). Each of the above requirements must be satisfied before a mandatory injunction will be ordered. *Big Bass Lake Cmty. Ass'n v. Warren*, 23 A.3d 619 (Pa. Cmwlth. 2011).

In the instant case, there is a strong showing that the [School] Districts had a legal obligation to fully fund the Charter School for the 2014-[]15 school year, but failed to do so, and Respondents refused to reconcile payments due to the Charter School. 24 P.S. § 17-1725-A(a). 'A violation of [a] statute constitutes irreparable harm.' *Markham v. Wolf*, 147 A.3d 1259, 1270 (Pa. Cmwlth. 2016). Denying the injunction will result in greater harm to the Charter School than to the [School] Districts or Respondents. This Court in *Chester I* recognized:

> It is clear, . . . that as between the school district and the charter school, the legislature has decided that **more harm will befall a charter school that is not paid timely and accurately than upon a school district that may experience a delay in the receipt of the state subsidy** to which it is entitled.

> *Id.* at 78 (emphasis added). The injunction will restore the status quo between the Charter School and the [School] Districts. Accordingly, the Charter School is entitled to injunctive relief.

*Richard Allen*, 161 A.3d at 426-27; *see also KIPP*, 161 A.3d at 442-43. Here, because the Charter Schools have no outstanding reconciliation claims, there is no legal basis on which this Court may enjoin Respondents.

There being no genuine issues of material fact, and there being record support that William Penn and Respondents have the clear right to relief in their favor, William Penn and Respondents' Summary Relief Applications are granted, and Petition Counts I through VI are dismissed. The CCCS and A/ECS Summary Relief Applications are denied.

### III. Preliminary Objections

Having determined that William Penn and Respondents are entitled to summary relief, their Preliminary Objections are moot. *See Leach v. Commonwealth*, 118 A.3d 1271 (Pa. Cmwlth. 2015), *aff'd*, 141 A.3d 426 (Pa. 2016); *see also*

*Marshall v. Pa. Bd. of Prob. & Parole*, 638 A.2d 451 (Pa. Cmwlth. 1994) (summary relief may be granted before disposing of outstanding preliminary objections).

## IV.  Conclusion

Respondents' Summary Relief Application and William Penn's Summary Relief Application are granted.  A/ECS' Summary Relief Application and CCCS' Summary Relief Application are denied.  Respondents' Preliminary Objections and William Penn's Preliminary Objections are overruled as moot.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arts Academy Charter School,      :
Chester Community Charter School,    :
Esperanza Academy Charter School,    :
and Esperanza Cyber Charter School,    :
            Petitioners    :
      :
         v.         :
      :
Commonwealth of Pennsylvania,    :
Department of Education,    :
The Secretary of Education,    :
Pedro A. Rivera (In His Official    :
Capacity), William Penn School    :
District,                :    No. 50 M.D. 2016
           Respondents    :

## O R D E R

AND NOW, this 8th day of June, 2018, the summary relief application filed by the Commonwealth of Pennsylvania, Department of Education and Pedro A. Rivera, in his official capacity as Secretary of Education (collectively, Respondents), is GRANTED. William Penn School District's (William Penn) summary relief application is GRANTED. The Chester Community Charter School's summary relief application is DENIED. The summary relief application filed by Arts Academy Charter School, Esperanza Academy Charter School and Esperanza Cyber Charter School is DENIED.

Respondents' and William Penn's Preliminary Objections are overruled as moot.

 

                        _____
                        ANNE E. COVEY, Judge